# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | | |
|---|---|---|
| CHRISTOPHER COCHRAN, Plaintiff, <br><br> v. <br><br> LX HAUSYS, LX HAUSYS AMERICA, INC., TONY FOWLER, LEE BEACH, ANTHONY HILES, <br><br> Defendants. | | Civil Action No. <br> _____ <br><br> JURY DEMAND |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff CHRISTOPHER COCHRAN ("Plaintiff" or "Mr. Cochran") by and through his undersigned counsel, as and for his Complaint and Jury Demand in this action against Defendants LX Hausys; LX Hausys America, Inc; Tony Fowler; Lee Beech; and Anthony Hiles, (collectively referred to as "Defendants"), hereby alleges as follows:

## NATURE OF THE ACTION

1.    This is an action for declaratory, injunctive, and equitable relief, as well as monetary damages, compensatory and punitive damages, plus pre-judgment and post-judgment interest, and attorney's fees and costs, to redress Defendants' unlawful employment practices and vindicate the rights of Plaintiff, a 20-year employee of LX HAUSYS AMERICA, INC., who faced pervasive discrimination, harassment,

hostility, and retaliation within the workplace due to his sexual orientation and disability and Defendants' unlawful retaliation against Plaintiff after he complained about the unlawful discrimination in the workplace.

Because Plaintiff's complaints were largely ignored, misconstrued, and/or weaponized against him, Plaintiff now brings this Complaint and Jury Demand against Defendants for employment discrimination under 42 U.S.C §2000e et seq. alleging discrimination and retaliation based on Plaintiff's disability, in violation of Title I of the Americans with Disabilities Act of 1990, as amended (ADA), Plaintiff's sexual orientation, in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII), and Defendants' retaliation against Plaintiff in violation of the Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

## **INTRODUCTION**

2.   This action seeks relief for a longstanding and ongoing environment of discrimination and harassment as well as hostile and retaliatory acts in the workplace that Defendants, through their acts and omissions, have allowed to permeate the workplace of LX HAUSYS AMERICA, INC.

3.   The discriminatory and unconstitutional conditions present at LX HAUSYS AMERICA, INC. derive from policies and practices adopted and allowed by Defendants.

4.   Plaintiff, who is homosexual, brings this action to challenge LX HAUSYS AMERICA, INC.'s pattern and practice of perpetuating and ignoring acts of sexual animosity toward Plaintiff perpetrated by Defendants and of mishandling

Plaintiff's complaints to Human Resources regarding this illegal and hostile behavior. Defendants' illegal and discriminatory conduct has gone unchecked for years. In fact, there is a class action suit in federal court involving fraud, discrimination, breach of contract, and wage violations against foreign workers of Mexican ancestry and national origin who were exploited as part of an illegal scheme for cheap labor in LX HAUSYS's production plant.

5.    Plaintiff, who asked for and accepted a demotion at LX HAUSYS AMERICA, INC. in an effort to escape the discrimination and retaliation he was experiencing, now challenges these hostile and hurtful acts and omissions and demands that Defendants be held responsible for violating his statutory and constitutional rights.

6.    Plaintiff has been subjected to heinous sexual harassment and workplace hostility, including an employee who was actually Plaintiff's supervisor at the time, Defendant Lee Beach, telling Plaintiff to "drop down on [his]knees and start licking on this [indicating his penis]." In addition, Defendant Tony Fowler concocted and spread a number of lies about Plaintiff such as Plaintiff's son told him to stop making passes at men at the job; a fellow co-worker quit because Plaintiff was making sexual innuendos towards him; and that there may be other "victims" of Plaintiff's inappropriate sexual aggressions. These attacks and actions that the Defendants perpetuated created a hostile work environment for Plaintiff.

7.    Plaintiff was retaliated against for reporting the sexual discrimination and harassment and the resulting hostile work environment. Plaintiff applied for the

position of Shift Supervisor. Defendant Tony Fowler discouraged him from even applying for the position and then gave the job to someone else with less experience and less seniority. When another position of Colorist became available, that position was given to someone else without the company even advertising the opening. Plaintiff was eager to fill either position and was well-qualified for both.

8.    When Plaintiff queried why he did not get the job of Shift Supervisor he was told that the person who got the position had nineteen years of experience and had experience as a Colorist. Plaintiff argued that he had more seniority than the other candidate. In addition, Plaintiff had more job experience in that he had worked in four departments at LX HAUSYS AMERICA, INC. and the other candidate had only worked in two. Significantly, Plaintiff was already an Assistant Shift Leader, hence his next role was, naturally, Shift Leader. The other candidate had never been an Assistant Shift Leader nor held any other kind of supervisory role.

9.    When Plaintiff asked why the position of Colorist was awarded to someone else without it being advertised, he was told that the employee handbook explained that jobs could be awarded without them being advertised. As such, Plaintiff was denied the opportunity to even apply for the position. All of these machinations were merely smokescreens to obfuscate the real reason Plaintiff was denied new job opportunities: sexual discrimination; disability discrimination; and retaliation.

10.    Plaintiff thus brings this action for damages in an effort to rectify these deep-seated and unconstitutional policies and practices within LX HAUSYS

AMERICA, INC. and to provide himself, and all other employees similarly situated, the equal protection they are promised under the Constitution and laws of the United States.

## **PARTIES**

11.   Plaintiff is a male with a documented disability who has worked at LX HAUSYS's Adairsville Facility for 20 years since approximately May 9, 2006. He is homosexual.

12.   Defendant LX HAUSYS is a foreign profit corporation with its principal place of business at 2480 Preston Ridge Road, Unit 350, Alpharetta, Georgia 30005.

13.   Defendant LX HAUSYS can be served with a copy of this lawsuit to its registered agent Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

14.    Defendants LX HAUSYS has a gross volume of sales made or business done of not less than $500,000 per year.

15.   Defendant LX HAUSYS AMERICA, INC., is a foreign profit corporation with its principal place of business at 900 Circle 75 Parkway, Suite 1500, Atlanta, Georgia. LX HAUSYS also has a facility located at 310 LG Drive SE, Adairsville, Georgia 30103.

16.   LX HAUSYS AMERICA, INC. can be served with a copy of this lawsuit to its registered agent Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

17.    Defendant Lee Beach is the Scheduler/Continuous Improvement Specialist at LX HAUSYS and Plaintiff's former supervisor.

18.    Defendant Tony Fowler is a Senior Production Manager and Plaintiff's former shift supervisor at LX HAUSYS Adairsville facility.

19.    Defendant Anthony Hiles is the HiMacs Department Leader at LX HAUSYS Adairsville facility.

20.    All Defendants exercise power by virtue of state law or are clothed in the authority of state law.

## JURISDICTION AND VENUE

21.    This Court has personal jurisdiction over the federal and state law claims because LX HAUSYS has its principal place of business in Atlanta and a significant portion of events took place in Adairsville, Georgia.

22.    This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding Defendants depriving Plaintiff of his rights by discriminating against Plaintiff based on his disability in violation of Title I of the Americans with Disabilities Act of 1990, as amended (ADA); discriminating against Plaintiff based on his sexual orientation in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII), and retaliating against Plaintiff for engaging in the protected act of reporting the discrimination, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"). This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

23.    The Northern District of Georgia is the proper venue pursuant to 28 U.S.C. § 1391(b)(2), as the Defendants are located in Bartow County and the events giving rise to this Complaint occurred within Bartow County, which is within the district and divisional boundaries of the Rome Division of the Northern District of Georgia.

## ADMINISTRATIVE PROCEDURES

24.    Prior to the filing of this Complaint, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title I of the Americans with Disabilities Act of 1990, as amended (ADA), Title VII of the Civil Rights Act of 1964, as amended (Title VII), and retaliation for engaging in protected activity, in violation of the ADA, and Title VII. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII").

25.    The EEOC issued to Plaintiff its Notice of Right to Sue and Plaintiff files this case within the legally designated timeframe.

26.    Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL BACKGROUND

**Christopher Cochran**

27.    Plaintiff began his employment with LX HAUSYS AMERICA, INC. on or about May 9, 2006 as an Operator.

28.    Soon after, Plaintiff was promoted to Assistant Shift Leader.

29.    Plaintiff has worked for LX HAUSYS AMERICA, INC. for over 20 years where he kept his personal life, including his sexual preferences, private.

30.    In addition, Plaintiff has a disability.

31.    Plaintiff is under doctor's care for anxiety and Post Traumatic Stress Disorder (PTSD) stemming from an assault that occurred in 2022.

32.    For this condition, Plaintiff takes two 75 mg doses of venlafaxine and one .5 mg dose of clonazepam per day.

33.    Plaintiff's employer is aware of this disability.

34.    The harassment and retaliation on his job has increased Plaintiff's anxiety and exacerbated his PTSD.

35.    During the three years Defendant Tony Fowler, Senior Production Manager, was Plaintiff's supervisor and shift leader, Defendant Fowler never cited Plaintiff for any infraction.

36.    Moreover, after twenty years of employment with LX HAUSYS AMERICA, INC., Plaintiff's file contains no evidence or indication that Plaintiff was ever inappropriate with or to another employee.

## HOSTILITY UNVEILED

37.    In 2008, Plaintiff mentioned to Defendant Lee Beach that Plaintiff was going on a mission trip.

38.    Defendant Beach is a Scheduler/Continuous Improvement Specialist at LX HAUSYS who was Plaintiff's supervisor at that time in 2008.

39.    In response to Plaintiff's comment about his mission trip, Defendant Beach lewdly remarked, "Mission trip? I have a mission for you, drop down on your knees and start licking this [indicating Defendant Beach's penis]."

40.    Plaintiff immediately reported this sexual harassment to Melvin Wells, Plaintiff's third shift supervisor.

41.    Melvin Wells reported the matter to Defendant Tony Fowler who was and still is Senior Production Manager and Plaintiff's shift supervisor at the time.

42.    To this day, Plaintiff has been provided no evidence that Defendant Beach was ever disciplined.

**The Adairsville Human Resources Investigation**

43.    In March 2024, a coworker, Melody Adams, told Plaintiff that some fellow coworkers had been slandering him.

44.    These coworkers were: Himner Broncana, Andrea Meda Cruz, and Cecelia Hernandez Ambris.

45.    The lies from these coworkers fomented a hostile work environment, making others uncomfortable around Plaintiff and making Plaintiff uncomfortable in the workplace.

46.    These three apparently spread that Plaintiff touched another coworker, Emmanual Leon, in a sexual way.

47.    Cecelia Hernandez Ambris told Mr. Leon that Plaintiff was a homosexual.

48. According to Mr. Leon, Ms. Ambris was one of the ones that characterized Plaintiff as a sexual predator which, naturally, made Mr. Leon unnecessarily wary of Plaintiff.

49. Mr. Leon denied that Plaintiff had touched him inappropriately or that he had ever stated otherwise.

50. In investigating the bullying and harassment against Plaintiff surrounding this matter, Defendant Fowler reviewed the recording of Plaintiff holding the door for Mr. Leon and did not witness any touching at all.

51. Upon information and belief, Defendant Anthony Hiles and Defendant Lee Beecher also reviewed the videotaped interaction between Mr. Leon and Plaintiff.

52. The trio also spread the salacious lie that Plaintiff had taken a coworker out for a romantic meal because Plaintiff liked Hispanic men and took young Hispanics out to eat.

53. In reality, Plaintiff ate a meal at Waffle House with Himner Broncana, a coworker at LX HAUSYS and one of the ones who circulated vicious lies about Plaintiff.

54. That meal happened at least five years ago when both Mr. Broncana and Plaintiff worked the night shift.

55. The two met at Waffle House in separate cars.

56. The dinner was not romantic.

57. These coworkers also lied and said that Plaintiff divorced because his wife caught him having an affair with another man.

58.    The truth is that Plaintiff's divorce was a mutual decision between he and his wife and was not precipitated by any affair by Plaintiff with another man.

59.    As Defendant Fowler "investigated" the false allegations Plaintiff's coworkers were making against him, Defendant Fowler himself was supplying the Human Resource Specialist at LX HAUSYS, Adam Chapman, with false and slanderous information about Plaintiff in an attempt to portray Plaintiff as a predator who preyed on young coworkers.

60.    The false information Defendant Fowler supplied Mr. Chapman came from Defendant Fowler, Defendant Hiles, and Defendant Beach.

61.    Defendant Fowler told Mr. Chapman that Plaintiff's son, Neal Cochran, "[came] over and yelled at [Plaintiff] to stop hitting on guys at work."

62.    Neal Cochran has vehemently denied that he never made this comment to his father.

63.    Defendant Fowler also insinuated to Mr. Chapman that Caleb Mealor, a subordinate and former Operator at LX HAUSYS, had stopped getting rides to work with Plaintiff and ultimately quit his job because he was a "victim" of Plaintiff's sexual harassment.

64.    In actuality, Mr. Mealor made Plaintiff and others who gave him a ride late for work and, consequently, Plaintiff as well as other employees, refused to continue to transport him to work.

65.    Mr. Mealor, therefore, had no means of getting to the job and had to quit.

66.    In addition, Mr. Mealor himself completely denies that Plaintiff ever made sexual advances towards him or that any such advances made him stop getting rides from him or quit his job.

67.    Defendant Fowler also stated that Dan Prokop, the former production manager, had "swept [ ] under the rug" a matter of Plaintiff touching an employee and making inappropriate comments.

68.    According to Defendant Fowler, this cover up was why that employee quit.

69.    However, Mr. Prokop does not recall "any formal or actionable complaint towards [Plaintiff] being brought to [his] attention."

70.    Defendant Fowler also told Mr. Chapman that Plaintiff had an Hispanic boyfriend that used to work at LX HAUSYS.

71.    Plaintiff did not have an Hispanic boyfriend that used to work for the company; this assertion was a complete fabrication on Defendant Fowler's part.

72.    Defendant Fowler's sham investigation included speaking to individual employees who were not involved in the investigation and discussing Plaintiff's sexuality with them, thereby essentially "outing" Plaintiff to his colleagues.

73.    In a stunning turn of events, Defendant Fowler inadvertently sent Plaintiff the derogatory text messages he had intended to send to Mr. Chapman.

74.    As a result, Plaintiff was able to read for himself the vicious and destructive lies Defendant Fowler was circulating about him around the workplace.

75.    Plaintiff responded to Defendant Fowler, immediately refuting all of these false allegations and derogatory comments with the truth.

76.    On March 21, 2024, Plaintiff informed corporate headquarters through a meeting with Human Resources about what Defendant Fowler had done in terms of texting to Mr. Chapman sexually discriminatory lies about Plaintiff.

**The Atlanta Human Resources Investigation**

77.    On or about April 1, 2024, Plaintiff voiced his complaints about Defendant Fowler to Mr. Chapman, Human Resources Specialist and Moonsu Park, Human Resources Director.

78.    Plaintiff told both Mr. Park and Mr. Chapman that the retaliation and hostile work environment had triggered his disability.

79.    Two different Human Resource representatives were sent to interview Plaintiff on two different occasions.

## HOSTILITY UNLEASHED

80.    Almost immediately after Plaintiff met with Mr. Park, Defendant Fowler and Defendant Hiles began their systematic retaliation against Plaintiff.

81.    Defendant Fowler and Defendant Hiles micromanaged and often criticized Plaintiff.

82.    The two forced Plaintiff to perform menial tasks in an effort to degrade and deflate him such as mop the floor.

83.    Defendant Fowler also denied Plaintiff a promotion to Shift Leader even though Defendant Fowler had once encouraged him to apply for a shift leader position.

84.    This time, Defendant Fowler discouraged Plaintiff from even bidding for the job.

85.    Defendant Fowler asked Plaintiff if he could fairly supervise the people who attacked and lied about him.

86.    Defendant Fowler further discouraged Plaintiff from bidding on the job by stating that the position would require a lot of overtime.

87.    Plaintiff was more qualified and had more seniority than Preston House, the person who ultimately got the position.

88.    In fact, Plaintiff had twice the experience of Mr. House—Plaintiff had worked in four departments while Mr. House had only worked in two.

89.    Plaintiff was already an Assistant Shift Leader while Mr. House had never led a shift or operated in any supervisory role.

90.    Plaintiff would have made thirty-one dollars an hour had he been promoted.

91.    Plaintiff was told that he was not qualified for the promotion because he did not have exposure to mixing.

92.    On the contrary, Plaintiff did have exposure to mixing even though mixing experience was not a prerequisite to obtaining a shift lead position.

93.    Tony Sanderson, the Shift Leader who had previously held the open position, did not have prior mixing experience.

94.    Mr. Sanderson will attest that mixing experience was never a condition precedent to promotion to Shift Leader.

95.    Approximately fifteen shift leaders did not have mixing experience prior to become Shift Lead.

96.    Clearly, Defendant Fowler's reason for denying Plaintiff the position he deserved and qualified for was merely a pretextual excuse to discriminate and retaliate against him.

**The Colorist Opening**

97.    Preston House's promotion created an open position for a Colorist.

98.    The Colorist job did not get posted to the internal Human Resources site, consequently, Mr. Cochran was not able to bid on the position.

99.    Mr. Chapman asked Defendant Tony Fowler why Plaintiff was not considered for the colorist position.

100.    Again, Defendant Fowler offered a pretextual excuse and never offered Plaintiff the position.

**The Transfer**

101.    On or about July 2, 2024, Plaintiff requested of Mr. Parks and Mr. Chapman that he be transferred due to the crippling hostility in the workplace.

102.  On July 24, 2024, Plaintiff was approved for a transfer to Autoskins as a Quality Technician; however, the new position was a demotion and he was no longer an Assistant Shift Leader.

103.  Plaintiff was forced to relinquish his role and title and had to transfer to another facility after more than nineteen years at the same plant in order to escape the harassment and hostility that were threatening the very essence of his being.

## HOSTILITY UNBEARABLE

104.  At the time of the harassment and retaliation, Plaintiff was under a doctor's care for Post Traumatic Stress Disorder for an assault in 2022.

105.  The workplace harassment and hostility exponentially increased Plaintiff's anxiety.

106.  For an example, when Plaintiff and Defendant Fowler were texting back and forth discussing the sexual harassment, Plaintiff actually had an anxiety attack.

107.  Plaintiff was forced to change his medication several times due to impact of the harassment and retaliation.

108.  When Plaintiff first learned what Himner Broncana, Andrea Meda Cruz, and Cecelia Hernandez Ambris had been saying about him, he told Defendant Fowler that he could not come into work that night.

109.  Defendant Fowler said that if Plaintiff did not come into work he would receive "points" and would not get holiday pay.

110.  Given the stress of the situation, Plaintiff could not work that night and Defendant Fowler punished him with "points" and no holiday pay.

111.  In Plaintiff's new position, he is no longer in a familiar environment and must learn the process and product anew.

112.  In addition, his new position provides no upward mobility unlike his previous position he was forced out of due to discrimination.

## COUNT I

**Title VII—Discrimination and Retaliation on the Basis of Sex**

113.  Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

114.  Plaintiff is a member of a protected class on the basis of sex. He is a homosexual.

115.  Plaintiff, in all respects, was performing his job in a manner that was consistent with LX HAUSYS's legitimate business expectations.

116.  Defendants discriminated against Plaintiff as described above, including but not limited to harassing him, subjecting him to a hostile work environment, denying him promotions and demoting him as the only option to escape the hostility on the job.

117.  Defendants also retaliated against Plaintiff as described above.

118.  Defendants' actions were taken with a willful and wanton disregard of Plaintiff's rights under Title VII.

119.  As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered

humiliation, degradation, emotional distress, other consequential damages, and lost wages.

## COUNT II

**Title I ADA-- Discrimination and Retaliation on the Basis of Disability**

120. Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

121. Defendants discriminated against Plaintiff, an otherwise qualified individual with a disability, because of his known disability by failing to provide him with reasonable accommodations that were available and that did not pose undue hardship, in violation of the ADA.

122. Defendants failed to engage in an interactive process with Plaintiff to identify the limitations resulting from his disability and potential accommodations that could overcome those limitations.

123. As a result of Defendants' unlawful disability discrimination, Plaintiff has suffered significant monetary loss, including loss of earnings and other benefits; emotional pain and suffering; and other nonpecuniary losses.

124. Defendants' unlawful disability discrimination was undertaken either with malice or with reckless indifference to Plaintiff's rights under the law.

125. Plaintiff is entitled to recover from Defendants compensatory damages under the ADA, attorneys' and witness' fees, costs, and expenses of litigation.

125. All conditions precedent to bringing this Count have been completed, performed and/or waived.

## COUNT III:

## Retaliation For Engaging in Protected Activity Under Title I (ADA)

126. Plaintiff realleges the foregoing paragraphs as though fully set forth herein.

127. As set forth above, Plaintiff engaged in protected activity by filing a charge of discrimination alleging disability discrimination.

128. Defendant Fowler discriminated against Plaintiff based upon his protected activity (*i.e.,* retaliatory discrimination) by giving Plaintiff "points" and taking away his holiday pay.

129. Defendant Fowler further discriminated against Plaintiff by denying him a promotion to Shift Leader, expressing concerns that he could not supervise the cabal that had attacked and harassed him.

130. Defendants also failed to accommodate Plaintiff when Defendants refused to address the sexual harassment in the workplace which aggravated Plaintiff's disability and his ability to manage it.

131. Defendants' only accommodation was to demote Plaintiff in title and rank.

132. As a consequence of Defendants' actions and failures to act, Plaintiff has suffered mental and emotional distress.

133. Defendants' conduct, as alleged herein, was undertaken with the intent to retaliate or with deliberate indifference to Plaintiff's federally protected right to be

free from unlawful retaliation, such that Defendants may be held liable pursuant to the ADA.

134.  Plaintiff is entitled to recover from Defendants compensatory, attorneys' and witness' fees, costs, and expenses of litigation.

135.  All conditions precedent to bringing this Count have been completed, performed and/or waived.

## COUNT II:

## Retaliation For Engaging in Protected Activity Under Title VII

136.  Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

137.  Plaintiff had a good faith belief that the Defendants were engaged in discriminatory conduct in violation of Title VII.

138.  Plaintiff engaged in protected opposition to Defendants' unlawful employment practices by complaining about the discrimination.

139.  In retaliation for Plaintiff's opposition to what he reasonably believed to be Defendants' unlawful discrimination against him, Defendant Fowler refused to promote Plaintiff and created such a hostile and oppressive work environment that Plaintiff was compelled to seek and accept a demotion in rank and title rather than continue to be belittled and humiliated in his previous position.

140.  The effect of these practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected his employment status because of his sexual orientation and disability.

141.  These unlawful employment practices were intentional.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of Georgia;

B.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    An order directing Defendants to place Plaintiff in the position he would have occupied but for Defendants' discriminatory, retaliatory, and/or otherwise unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment,

stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

F. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

G. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H. An award of punitive damages;

I. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees and costs of this action, including expert witness fees to the fullest extent permitted by law; and

J. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff Christopher Calhoun hereby demands a trial by jury on all issues of fact and damages stated herein pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted this day: July 21, 2025.

*/s/ Dasha M. Jackson*
Dasha M. Jackson
Georgia Bar No. 386323

The Haigler Firm, LLC
400 Galleria Parkway, Suite 1500
Atlanta, Georgia 30339
(404) 475-2575
jackson@haiglerfirm.com